RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0232P (6th Cir.)
File Name: 00a0232p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────────

THOMAS E. BOWMAN,
    *Plaintiff-Appellant,*

v.                                          No. 99-3255

SHAWNEE STATE
UNIVERSITY; JESSICA J.
JAHNKE,
    *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 96-01088—Sandra S. Beckwith, District Judge.

Argued: March 15, 2000

Decided and Filed: July 17, 2000

Before: MERRITT, DAUGHTREY, and MAGILL,[*]
Circuit Judges.

───────────────────

**COUNSEL**

**ARGUED:** Theodore R. Saker, VI., Columbus, Ohio, for
Appellant. Richard N. Coglianese, OFFICE OF THE

───────────────────

[*] The Honorable Frank J. Magill, Circuit Judge of the United States
Court of Appeals for the Eighth Circuit, sitting by designation.

1

ATTORNEY GENERAL, EMPLOYMENT LAW SECTION, Columbus, Ohio, for Appellees. **ON BRIEF:** Theodore R. Saker, VI., Columbus, Ohio, for Appellant. Kevin L. Murch, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

————————

## OPINION

————————

MAGILL, Circuit Judge. This appeal arises out of Thomas E. Bowman's (Bowman) lawsuit against Shawnee State University (University) and Dr. Jessica J. Jahnke (Jahnke) alleging sexual harassment, discrimination, and retaliation in violation of Title VII, 42 U.S.C. §2000e, *et seq.*, and Ohio Revised Code (O.R.C.) § 4112, assault and battery by Jahnke, and intentional or negligent infliction of emotional distress by both Jahnke and the University. Jahnke filed a counterclaim against Bowman alleging defamation, intentional infliction of emotional distress, and abuse of process. Bowman appeals the district court's[1] grant of summary judgment dismissing his sexual harassment claims, and his assault and battery claim. Bowman also appeals the court's dismissal of Jahnke's remaining counterclaims without prejudice. We affirm the judgment of the district court.

## I. BACKGROUND

In 1985, Bowman, a former star tailback at West Virginia University, began working for the University in its athletic complex and as a part-time instructor. In 1988, Bowman became a full-time instructor teaching a variety of health and physical education courses. Jahnke was hired in 1990 and became the University's Dean of Education shortly thereafter. In 1991, Bowman was selected to be the Coordinator of

——————————

[1]The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

*See id.* at 559. *See also Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir. 2000) (holding that "under the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000) (holding that simple teasing, offhand comments, and isolated incidents including a sexual advance did not amount to discriminatory changes in the terms and conditions of a plaintiff's employment); *Sprague v. Thorn Am., Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997) (holding that five incidents of allegedly sexually-oriented offensive comments during a sixteen-month period were not sufficiently frequent to create liability).

## III.  CONCLUSION

In sum, we affirm all of the district court's judgments dismissing Bowman's claims and the court's dismissal of Jahnke's counterclaims without prejudice.[7]

---

[7]Bowman's other claims on appeal are also rejected and do not require a lengthy discussion.  After careful review, we reject Bowman's claims that the district court erred in dismissing his sexual discrimination claims under O.R.C. § 4112, his assault and battery claim against Jahnke, and in granting Jahnke's motion to dismiss her counterclaim without prejudice.  We also decline to address Bowman's claim that the district court erred in not granting summary judgment on Jahnke's abuse of process counterclaim that was dismissed without prejudice.  "[A] voluntary dismissal without prejudice leaves the situation as if the action had never been filed," and, thus, it would not be proper to rule on the abuse of process counterclaim.  *Sherer v. Construcciones Aeronauticas, S.A.*, 987 F.2d 1246, 1247 (6th Cir. 1993).

Sports Studies (Coordinator) at the University, a position under Jahnke's supervision.

Beginning in 1991, Bowman claims that Jahnke sexually harassed him on various occasions, including the following alleged incidents:

1) In late 1991, while Jahnke was in Bowman's office, she placed her hand on his shoulder and rubbed it for approximately one to two seconds.  Bowman jerked away from Jahnke and said "no."

2) In June of 1992, Bowman requested time off.  Janke approved the request with the stipulation that Bowman not miss any classes.  When Bowman returned to work, he found a memorandum from Jahnke chastising him for missing classes.  Jahnke wrote this memo even though Bowman had not missed a class.

3) After emphasizing the importance of teaching every class, Jahnke reprimanded Bowman for not attending a meeting scheduled at a time when he had to teach a class.  However, the meeting was not required.  Jahnke had simply requested that faculty members in her department attend the meeting to offer their support for her Deanship that was being considered for elimination due to restructuring at the University.

4) Jahnke forced Bowman to apologize for failing to attend a party hosted by one of Jahnke's good friends and co-workers.

5) At a 1992 Christmas party, Bowman was leaning against the stove in Jahnke's house when Jahnke grabbed his buttocks.  Bowman turned around and told Jahnke that if someone were to do that to her she would fire him or her.  Jahnke replied that "she controlled [Bowman's] ass and she would do whatever she wanted with it."

6) In the spring of 1994, Bowman went to Jahnke's house to repair her deck, which took approximately an hour to fix.

Jahnke, excited because she would be able to use the whirlpool on the deck, told Bowman "[l]et's get it finished, you and I can try [the whirlpool] out together."

7) In the summer of 1994, Jahnke invited Bowman and his girlfriend to her house to go swimming in her pool. After a short period of time, Bowman decided to leave, at which point Jahnke commented to him that "[n]ext time, you know, you ought to come by yourself and enjoy yourself."

8) On January 9, 1995, Bowman met with Jahnke in her office. Jahnke, claiming that she was irate because Bowman lied to her about a class he was teaching at Ohio University, put her finger on Bowman's chest, placed her hands upon him, and pushed him towards the door. As he left the office, Bowman told Jahnke that "[t]his is the last time you're ever going to touch me."

9) Jahnke called Bowman at home on various occasions. Bowman found the calls to be harassing, although they were not abusive or sexual in nature.

10) Bowman also alleges various other incidents, including the following: Jahnke demanded that Bowman leave a phone number with her when he was on vacation; Jahnke required Bowman to take additional athletic training in order for him to remain in the Coordinator position; Jahnke required Bowman to investigate fellow employees and students; Jahnke demanded that Bowman take his name off his office door when she removed him from the Coordinator position; Jahnke required Bowman to work in the summer without pay; Jahnke allowed females to work outside the University, but prohibited Bowman from doing so; Jahnke threatened that she would "pull the plug" on Bowman if he did not submit to her wishes and; Jahnke reprimanded Bowman for working extra jobs on his own free time, but demanded that Bowman come to her home during working hours to perform extra duties.

The alleged sexually harassing conduct by Jahnke came to a close in 1995. Within days of the January 9, 1995, meeting in Jahnke's office, Jahnke wrote a memorandum to Bowman

specific epithets used, such as "slut" and "fucking women," was sufficient to create an inference that her gender was the motivating impulse for her co-workers' behavior and allowed the non-sexual harassment to be considered in the hostile environment analysis. *See Williams*, 187 F.3d at 565-66. Unlike the plaintiff in *Williams*, Bowman has not alleged that Jahnke made a single comment evincing an anti-male bias. Besides a bare and unsupported assertion that some women employees were allowed to engage in work outside the University while he was not, Bowman has not shown that the non-sexual conduct he complains of had anything to do with his gender. While he may have been subject to intimidation, ridicule, and mistreatment, he has not shown that he was treated in a discriminatory manner because of his gender.

The only incidents that may arguably be considered in the hostile work environment analysis are the 1991 shoulder rubbing incident, the 1992 Christmas party incident, the 1994 whirlpool incident, the 1994 swimming pool incident, and the 1995 meeting in Jahnke's office. Although we consider more alleged incidents in the analysis than did the district court, we agree with the court's holding that the incidents that may properly be considered are not severe or pervasive and, thus, do not meet the fourth element of the hostile environment analysis. While the allegations are serious, they do not constitute conduct that is pervasive or severe. We note that like *Williams*, three of the alleged incidents in this case "were not merely crude, offensive, and humiliating, but also contained an element of physical invasion." *Williams*, 187 F.3d at 563. However, the conduct in this case is not nearly as severe or pervasive as the harassment in *Williams* or in other cases where the court found that the conduct in question was not severe or pervasive enough to constitute a hostile environment. In *Williams*, there were fifteen separate allegations of sexual harassment over a period of one year. *See id.* at 559. The allegations included derogatory and profane remarks directed at the plaintiff, sexually explicit comments directed at the plaintiff, offensive comments directed at women in general, denial of plaintiff's overtime, and the exclusion of plaintiff from certain workplace areas.

constitute sexual harassment that was severe or pervasive. The court found that the 1992 Christmas party incident, the 1994 whirlpool incident, and the 1994 swimming pool incident were imbued with sufficient sexual flavor to show that Bowman was subjected to uninvited harassment and that the harassment was based upon his status as a member of a protected class but found that the harassment was not severe or pervasive.

Non-sexual conduct may be illegally sex-based and properly considered in a hostile environment analysis where it can be shown that but for the employee's sex, he would not have been the object of harassment. *See Williams*, 187 F.3d at 565. "Any unequal treatment of an employee that would not occur but for the employee's gender may, if sufficiently severe or pervasive under the *Harris* standard, constitute a hostile environment in violation of Title VII." *Id.* However, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'" *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1998) (emphasis in original). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (citation omitted).

We agree with the district court that while Bowman recites a litany of perceived slights and abuses, many of the alleged harassing acts cannot be considered in the hostile environment analysis because Bowman has not shown that the alleged harassment was based upon his status as a male. Bowman, while alleging that Jahnke tormented him personally, has not show that the non-sexual harassment had an anti-male bias. In Title VII actions, however, it is important to distinguish between harassment and discriminatory harassment in order to "ensure that Title VII does not become a general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). In *Williams*, evidence that the plaintiff was ostracized on myriad instances when others were not, combined with gender-

informing him that she was angry that he lied to her about teaching a class at Ohio University.[2] Janke then stripped away his responsibilities as Coordinator. Bowman's removal from the Coordinator position was only temporary, however, and did not result in a reduction of his salary. On January 19, 1995, Dr. Addington, University Provost, informed Bowman that his removal had been rescinded and the termination letter removed from his personnel file. Shortly after the final incidents giving rise to this lawsuit occurred, Bowman, suffering from mental illness, was placed on permanent disability retirement by the State Teachers Retirement System. Jahnke also resigned her position and left the University to operate a bed and breakfast in Maine.

On November 13, 1996, Bowman filed the current suit against the University and Jahnke. On July 30, 1997, the district court granted Jahnke's motion for judgment on the pleadings as to Bowman's Title VII claims against her on the basis that individual liability does not attach under Title VII unless the individual defendant otherwise qualifies as an employer. Because Bowman had only invoked the court's federal question jurisdiction, the district court dismissed Bowman's state law claims against Jahnke without prejudice.

On June 19, 1998, the district court granted summary judgment to the University on Bowman's Title VII and O.R.C. § 4112 sexual harassment, sexual discrimination, and retaliation claims and held that the Eleventh Amendment barred Bowman's state law claims against the University. The court also reinstated Bowman's state law claims against Jahnke and granted summary judgment to Bowman on Jahnke's defamation and intentional infliction of emotional distress counterclaims. The court, however, denied summary

---

[2] Part of Jahnke's concern about Bowman's outside commitments stemmed from her arrangement for Bowman to have two hours per term of "release time" in order to allow Bowman sufficient time to fulfill his responsibilities as Coordinator. The release time exempted Bowman from two hours per term of teaching in order to accommodate his duties as Coordinator.

judgment to Bowman on Jahnke's abuse of process counterclaim.

On September 24, 1998, the district court dismissed Bowman's sex-discrimination claims against Jahnke under O.R.C. § 4112 on the basis that, similar to Title VII, liability does not attach to individuals under O.R.C. § 4112. The court also granted judgment to Jahnke on Bowman's negligent infliction of emotional distress and assault and battery claims but refused to enter judgment for Jahnke on Bowman's claim for intentional infliction of emotion distress.

On December 16, 1998, the district court dismissed Bowman's intentional infliction of emotional distress claim, holding that Bowman could not proceed with the claim until the Ohio Court of Claims made a determination as to whether Jahnke was entitled to immunity pursuant to O.R.C. § 9.86.[3] On February 6, 1999, the district court granted Jahnke's motion for dismissal of her counterclaims and dismissed the counterclaims without prejudice. The court then declared the case closed. Subsequently, Bowman brought the present appeal.

## II. ANALYSIS

### A. Title VII claims against the University

Bowman argues that the district court erred in dismissing his Title VII sexual harassment claims. Bowman argues that the Supreme Court in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), held that a plaintiff does not need to prove that he suffered a tangible employment action even when the alleged harassment is not severe or pervasive. Bowman

---

[3] Bowman appeals the court's holding that the Ohio Court of Claims must decide whether Jahnke is entitled to immunity pursuant to O.R.C. § 9.86. This claim is now moot, however, because subsequent to the filing of the parties' briefs on appeal, the Ohio Court of Claims held that Jahnke was acting outside the scope of her duties with respect to the conduct alleged by Bowman and, thus, is not entitled to immunity from liability.

an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive. *See id.* at 21-22.

The court must consider the totality of the circumstances when determining whether, objectively, the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. *See Williams*, 187 F.3d at 562. "[T]he issue is not whether each incident of harassment *standing alone* is sufficient to sustain the cause of action in a hostile environment case, but whether--taken together--the reported incidents make out such a case." *Id.* The work environment as a whole must be considered rather than a focus on individual acts of alleged hostility. *See id.* at 563. Isolated incidents, however, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000). Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

In considering the alleged incidents of harassment, the district court found several to be nonprobative because they were not based on Bowman's sex. The court found that the 1991 shoulder rubbing incident in Bowman's office was ambiguous and of no evidentiary value absent some other evidence suggesting that it should be considered a harassing act. The court also found the January 9, 1995, confrontation in Jahnke's office and the repeated telephone calls from Jahnke to be nonprobative because Bowman had offered no evidence that those acts constituted harassment on the basis of his sex. The court then considered whether the remaining alleged incidents, considered together, were sufficient to

approximately ten days with no loss of income is properly characterized as a *de minimis* employment action that does not rise to the level of a materially adverse employment decision.[6]

### 2. Was Jahnke's harassment severe or pervasive?

A plaintiff may establish a violation of Title VII by proving that the sex discrimination created a hostile or abusive work environment without having to prove a tangible employment action. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986). In order to establish a hostile work environment claim, an employee must show the following: 1) the employee is a member of a protected class, 2) the employee was subject to unwelcomed sexual harassment, 3) the harassment was based on the employee's sex, 4) the harassment created a hostile work environment, and 5) the employer failed to take reasonable care to prevent and correct any sexually harassing behavior. *See Williams v. General Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir. 1999).

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)(internal quotations and citations omitted). Both

---

[6] At oral argument, although not argued by Bowman, there were questions raised as to whether Bowman's claims that Jahnke coerced him into resigning his position as manager of the James A. Rhodes Athletic Center, part of the University's athletic facilities, and his resignation from his job at the University due to his permanent disability could be considered constructive discharges, and, thus, tangible employment actions. A constructive discharge exists "if working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *See Yates v. Avco Corp.*, 819 F.2d 630, 636-37 (6th Cir. 1987)(citations omitted). In this case, as discussed below, Jahnke's alleged sexual harassment was not severe or pervasive and, therefore, Bowman cannot show that a reasonable employee would have felt compelled to resign.

argues, in the alternative, that he suffered a tangible adverse employment action by the removal of his responsibilities as Coordinator.[4] Bowman also argues that the district court erred in holding that the alleged sexual harassment was not severe or pervasive. The district court's grant of summary judgment is reviewed *de novo*. *See Lucas v. Monroe County*, 203 F.3d 964, 971 (6th Cir. 2000).

### 1. Did Jahnke's harassment culminate in a tangible employment action?

To prevail under a sexual harassment claim without showing that the harassment was severe or pervasive, the employee must prove the following: 1) that the employee was a member of a protected class; 2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was on the basis of sex; 4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of *respondeat superior* liability. *See Kauffman v.*

---

[4] Bowman's claim that the Supreme Court in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), held that no tangible employment action is required to be proved in cases where the harassment is not severe or pervasive (what used to be referred to as *quid pro quo* sexual harassment) is without merit. In *Ellerth*, the Court explained how the two terms are relevant when there is a threshold question whether a plaintiff can prove discrimination in violation of Title VII:

> When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII. For any sexual harassment preceding the employment decision to be actionable, however, the conduct must be severe or pervasive.

*Id.* at 753-54.

*Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 186 (6th Cir. 1992).

The district court rejected Bowman's claim that he suffered a tangible job detriment by the removal of his responsibilities as Coordinator. The court reasoned that there was no tangible employment action for the following reasons: 1) Bowman's removal from the position was not a demotion because the Coordinator position was not an actual position at the University but, rather, merely a title provided to a person which describes the duties he or she was performing, and was not accompanied by a reduction in salary; 2) Bowman had not offered any evidence showing that the Coordinator position was viewed as more prestigious than the full-time teaching position in which he remained; and 3) the University reinstated Bowman to his position as Coordinator.

While a permanent loss of the Coordinator position may well have constituted a tangible job detriment, an issue we need not decide, it is clear that Bowman did not suffer an adverse employment action[5] by the very temporary loss of his position as Coordinator. In *Hollins v. Atlantic Co.*, 188 F.3d 652 (6th Cir. 1999), the court noted the requirements for establishing a materially adverse employment action:

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

---

[5] Courts use the terms "tangible employment detriment" and "materially adverse employment action" interchangeably. *See, e.g., Bryson v. Chicago State Univ.*, 96 F.3d 912, 916 (7th Cir. 1996).

*Id.* at 662 (citation omitted). The Sixth Circuit has consistently held that *de minimis* employment actions are not materially adverse and, thus, not actionable. *See, e.g., Jacklyn v. Schering-Plough HealthCare Prod.*, 176 F.3d 921, 930 (6th Cir. 1999) (holding that "neither requiring plaintiff to work at home while she was recovering from out-patient surgery, nor rejecting computer expenses that previously had been approved, were materially adverse employment actions"); *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999) (holding that police chief's suspension with pay was not an adverse employment action); *Hollins*, 188 F.3d at 662 (6th Cir. 1999) (holding that "[s]atisfactory ratings in an overall evaluation, although lower than a previous evaluation, will not constitute an adverse employment action where the employee receives a merit raise"); *Kocsis v. Multi-Care Management*, 97 F.3d 876, 885 (6th Cir. 1996) (holding that "reassignments without salary or work changes do not ordinarily constitute adverse employment decisions in employment discrimination claims").

Even if we assume that the loss of the Coordinator position constitutes a significant change in employment status, there is no tangible employment action in this case because the very temporary nature of the employment action in question makes it a non-materially adverse employment action. Similar to cases where the employment action is not significant enough to rise to the level of a materially adverse employment action, cases where the employment action, while perhaps being materially adverse if permanent, is very temporary also do not constitute materially adverse employment actions. This principle was recognized in *Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178 (6th Cir. 1992), where the court indicated that even if a tangible job detriment has been suffered, there may be a *de minimis* exception for temporary actions or where further remedial action is moot and no economic loss occurred. *See id.* at 187. *See also Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987) (holding that there was no adverse employment action where temporary transfer did not result in loss of salary or benefits). The removal of Bowman from the Coordinator position for only