Tom CUTTS and Dianna
Cutts, Plaintiffs,

v.

MCDONALD'S CORPORATION,
Defendant.

No. 1:02–CV–405.

United States District Court,
W.D. Michigan,
Southern Division.

July 30, 2003.

Peter R. Tolley, Tolley, VandenBosch, Korolewicz & Brengle, Grand Rapids, MI, for Plaintiffs.

Malcolm D. Brown, Butzel Long, Bloomfield Hills, MI, for Defendant.

## MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MCKEAGUE, District Judge.

This is an action under Michigan's Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* The Court's jurisdiction is based on the parties' diversity of citizenship. 28 U.S.C. § 1332. Plaintiff Tom Cutts, an African–American, alleges defendant McDonald's Corporation wrongfully discharged him from employment because of his race. His wife, plaintiff Dianna Cuts seeks damages for loss of consortium. Now before the Court is defendant McDonald's motion for summary judgment pursuant to Fed.R.Civ.P. 56. The Court has carefully considered the briefs and exhibits submitted by the parties, as well as oral arguments presented by counsel at the hearing conducted on May 28, 2003. For the reasons that follow, the Court concludes that defendant's motion must be granted.

I

The following facts are not materially disputed. Plaintiff Tom Cutts commenced employment for McDonald's as Human Resources Supervisor for the Grand Rapids Region in February 1996. Although the decision to hire plaintiff was made primarily by his Supervisor, Department

Head Tony Tollis, the relationship between plaintiff and Tollis had apparently begun to sour in early 2001. Plaintiff continued to receive "good" to "excellent" performance reviews, but Tollis had become critical of plaintiff's work in some areas. These criticisms coincided roughly with an adjustment in plaintiff's work responsibilities. Due to a merger of the Training and Human Resources Departments, plaintiff was expected to assume more responsibility for training employees.

On June 5, 2001, plaintiff had a conversation with a co-worker Barbara Griffin. Griffin later described this conversation by saying that "Tom Cutts became increasingly agitated and referred to Tony Tollis as a liar and as the devil." Barbara Shaw (Griffin) aff. p. 1. She stated that "Cutts then made the statement that he could kill Tony Tollis." *Id.* "Very concerned" about plaintiff's statements and demeanor, Griffin reported the conversation to Regional Manager and Chief Operating Officer Steve Norby and Tony Tollis.

Norby directed Regional Security Manager Myra Kirkwood, an African–American, to investigate the matter. In a telephone conversation on June 8, 2001, Kirkwood repeatedly asked plaintiff whether he said he could kill Tony Tollis. Kirkwood aff. ¶ 6. She characterized his responses as "evasive," but observed that he never directly denied having made the statement. *Id.* His responses left Kirkwood "uncomfortable." *Id.* She reported the substance of this conversation to Norby on June 11 or 12.

On or about June 12, 2003, plaintiff approached Norby to discuss his concerns. Norby left the room to invite Tollis to join them. As Norby and Tollis returned together, Norby noticed plaintiff putting something metallic in his pocket. Asked what the object was, plaintiff eventually disclosed a compact tape recorder. Norby was surprised and upset by the revelation.

Plaintiff explained that he intended to secretly record the meeting because he did not trust that he would be treated fairly. Tom Cutts dep. tr. p. 245. Norby and Tollis then conferred with each other and with Tracey Allen, Human Resources Director for the Great Lakes Division, and jointly decided to suspend plaintiff pending further investigation.

Thereafter, Norby made the decision to terminate plaintiff's employment. He explained his decision as follows:

I based my decision on the fact that Tom Cutts tried to tape-record a meeting with me. I was particularly concerned about the tape recording incident because Tom Cutts was a Human Resources and Development Consultant, and in that position he must maintain confidentiality, set the example for others by his conduct, and help create an atmosphere of openness and trust.

While I was aware of the threat Tom Cutts made and the evasive answers he gave to Myra Kirkwood, I decided to terminate Tom Cutts at that time as a result of the incident with the tape recorder.

Norby aff. ¶¶ 18, 19. Notice of his discharge was communicated to plaintiff by Tracey Allen on or about July 2, 2001.

This action followed. In his one-count three-page complaint, plaintiff alleges that his termination was racially motivated, in violation of the Elliott–Larsen Civil Rights Act. In moving for summary judgment, defendant McDonald's contends plaintiff's claim is not supported by evidence of racial discrimination.

## II

Defendant's motion for summary judgment requires the Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a trial. Fed.

R.Civ.P. 56(c). *See generally, Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). The Court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Once the moving party identifies elements of a claim or defense which it believes are not supported by evidence, the nonmovant must present affirmative evidence tending to show a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law identifies which facts are "material." Facts are "material" only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A complete failure of proof concerning an essential element necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Id.* at 252, 106 S.Ct. 2505.

### III

■ At the hearing on May 28, 2003, plaintiff conceded that he has not adduced direct evidence of racial discrimination. His asserted indirect evidence of discrimi-nation is subject to evaluation under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 438 (6th Cir.2002) (recognizing that the *McDonnell Douglas* analysis has been applied by Michigan courts to discrimination claims under the Elliott–Larsen Civil Rights Act).

Under *McDonnell Douglas,* plaintiff must first establish a prima facie case of discrimination, consisting of a showing that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for his position, and (4) he suffered the adverse action under circumstances giving rise to an inference of unlawful discrimination. *Lytle v. Malady (On Rehearing),* 458 Mich. 153, 172–73, 579 N.W.2d 906 (1998). Once plaintiff has established a prima facie case, a presumption of discrimination arises and the burden shifts to defendant to articulate a legitimate nondiscriminatory reason for plaintiff's discharge. *Id.* at 173, 579 N.W.2d 906. The explanation provided must be legally sufficient to justify a judgment for defendant. *Id.* at 174, 579 N.W.2d 906, quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If defendant carries this burden, the presumption of discrimination is rebutted and the burden of proof shifts back to plaintiff to show that defendant's proffered reasons are not true reasons and are a mere pretext for racial discrimination. *Id.* at 174, 579 N.W.2d 906; *see also Hazle v. Ford Motor Co.,* 464 Mich. 456, 465–66, 628 N.W.2d 515 (2001).

Here, defendant McDonald's, for purposes of this motion, presumes without conceding that plaintiff has established a prima facie case. McDonald's contends that its decision to discharge plaintiff be-

cause he attempted to secretly record a meeting with a superior is a legitimate nondiscriminatory justification for the action taken. The affidavits of Steve Norby, Tony Tollis and Tracey Allen all substantiate McDonald's contention that this was in fact the reason for plaintiff's discharge. Further, the proposition that such conduct is a valid or legally sufficient reason to terminate employment is supported by several rulings. *See Wetter v. Munson Home Health,* 1999 U.S. Dist. LEXIS 15683 at *27, No. 1:98–CV–807, (W.D.Mich. Oct. 4, 1999) (finding secret recording of conversations with supervisors reasonable grounds for termination); *Minton v. Lenox Hill Hosp.,* 160 F.Supp.2d 687, 696 (S.D.N.Y.2001) (recognizing secret tape recording of workplace conversations to be inappropriate conduct for supervisory employee); *Danca v. Kmart Corp.,* 2000 WL 33407239 at *5, No. 208738 (Mich.App. Aug. 25, 2000) (secretly tape recording workplace conversations deemed legitimate nondiscriminatory reason for employee's suspension and demotion).

Plaintiff maintains, despite this case law, that his attempt to record his meeting with Norby and Tollis is not necessarily reasonable grounds for discharge. He observes that in *Danca,* similar conduct was deemed by the employer to warrant discipline only in the form of suspension and demotion.

The Court is wholly unpersuaded. Under the facts and circumstances of this case, plaintiff's attempt to surreptitiously record the subject conversation with his superiors was clearly a legally sufficient reason to terminate his employment. First, the subject conversation was related to an ongoing investigation of a report that plaintiff had angrily threatened the life of his immediate supervisor. Hence, the workplace was already affected by an undercurrent of tension. Second, the attempt to secretly record the conversation reflects deception and dishonesty which exacerbated the existing tension and necessarily undermined the mutual trust essential to harmonious working relations. Third, this undisputed misconduct—a practice plaintiff admits he had occasionally engaged in for several months—was committed by a Human Resources Supervisor, one necessarily expected to be an exemplary leader in promoting and fostering harmonious relations in the workplace. In other words, this particular misconduct was directly antithetical to the mission of plaintiff's position, facially disqualifying him therefor.

## IV

■ Plaintiff insists that racial discrimination is the true reason for his discharge and that the given reason is pretextual. To carry his burden in this regard, plaintiff must show that defendant's given reason (1) has no basis in fact, (2) did not actually motivate his discharge, or (3) was insufficient to warrant discharge. *Hopson,* 306 F.3d at 434. Here, plaintiff relies on the second of these three means for showing pretext. Under Michigan law, plaintiff is obliged to present evidence creating a triable issue not only as to the truthfulness of the given reason, but also as to whether discriminatory animus was a motivating factor. *Id.* at 438–39, citing *Lytle,* 458 Mich. at 175–76, 579 N.W.2d 906.

To carry this burden, plaintiff relies on various items of circumstantial evidence. First, plaintiff contends that he was treated less favorably than a similarly situated Caucasian female employee, Laurie Taylor. Plaintiff contends that Taylor received higher pay despite having inferior educational qualifications. He also contends that she received more desirable work assignments and more favorable performance evaluations. These disparities are said to give rise to an inference of race discrimination.

Plaintiff's arguments are not supported by evidence of record. He has failed to rebut defendant's demonstrated explanation that Laurie Taylor was better paid because she (a) had greater seniority than plaintiff, both with McDonald's and as Human Resources Supervisor, and (b) received superior performance evaluations. Plaintiff's performance evaluations consistently ranged from "good" to "excellent," while Taylor was consistently deemed to perform at the "outstanding" level. Yet, in his deposition, plaintiff stated that he either agreed with or accepted his performance ratings and disclaimed any belief that they were influenced by racial bias. Further, plaintiff's complaint about work assignment disparities is bald argument, unsupported by evidence creating a triable issue. It follows that plaintiff has failed to demonstrate that Taylor is similarly situated in all relevant respects, such that more favorable treatment of her might reasonably give rise to an inference of discrimination.

Plaintiff also contends that defendant's failure to promote him, as promised, to Human Resources Manager evidences discrimination. A prima facie case or an inference of discrimination may stem from a failure to promote if accompanied by a showing that plaintiff, a member of a protected class, applied for and was qualified for a position that was instead awarded to another who is not a member of the protected class under circumstances suggesting that impermissible factors were considered. *See Hazle,* 464 Mich. at 467–72, 628 N.W.2d 515. Yet, even if plaintiff were deemed to have shown that he applied for and was qualified for the Human Resources Manager position, there is no evidence that such a position ever became available or was awarded to any other applicant. No inference of discrimination can reasonably be drawn from these circumstances.

Acknowledging this shortcoming, plaintiff modified his argument at the hearing on May 28, 2003. It is not that he was actually denied promotion, plaintiff contends, but that he was denied the training necessary to fully qualify for promotion, if and when a position became available. Plaintiff's argument is creative, but unavailing.

A prima facie case giving rise to an inference of discrimination requires a showing of "materially adverse employment action." *See Bowman v. Shawnee State University,* 220 F.3d 456, 461 (6th Cir.2000); *Wilcoxon v. Minnesota Mining & Mfg. Co.,* 235 Mich.App. 347, 362, 597 N.W.2d 250 (1999).

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Bowman,* 220 F.3d at 461–62, quoting *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir.1999). *De minimis* employment actions are not materially adverse. *Id.* at 462.

Denial of a training opportunity is not a materially adverse action absent evidence that it actually resulted in denial of a promotion or opportunity for advancement. *Douglas v. Caldera,* 29 Fed.Appx. 257, 258–59 (6th Cir.2002). Plaintiff has failed to adduce evidence that the asserted denial of training actually resulted in denial of a promotion or other advancement opportunity. Under the circumstances, the impact of the denial of training, to the extent the

denial is substantiated at all, appears to have been *de minimis* or at best a matter of pure speculation. The denial of training does not therefore constitute the requisite "materially adverse action" and does not justify an inference of unlawful discrimination.

## V

Accordingly, the Court finds that plaintiff has failed to impugn defendant's proffered legitimate discriminatory reason for discharging him. He has failed to adduce evidence upon which a reasonable jury could find the given reason to be a pretext for race discrimination. It follows that plaintiff has failed to demonstrate the existence of a genuine issue of material fact and that defendant McDonald's is entitled to judgment as a matter of law. As a consequence, the claim of plaintiff Dianna Cutts, for loss of consortium, necessarily fails as well. A judgment order consistent with this memorandum opinion shall issue forthwith.

### JUDGMENT ORDER

In accordance with the Court's memorandum opinion of even date,

**IT IS HEREBY ORDERED** that the motion of defendant McDonald's Corporation for summary judgment is **GRANTED;** and

**IT IS FURTHER ORDERED** that defendant is hereby **AWARDED JUDGMENT** in its favor on the claims of plaintiff Tom Cutts under the Elliott–Larsen Civil Rights Act and plaintiff Dianna Cutts for loss of consortium.