CLAY, Circuit Judge,
concurring in part
and dissenting in part.
The majority opinion reverses the district court with respect to William Sanford’s hostile work environment and retaliation claims. I concur with those holdings. However, I dissent from the majority’s holding that the district court properly granted summary judgment with respect to Sanford’s quid pro quo claim, and would reverse with respect to that claim as well.
As the majority opinion correctly states, a plaintiff bringing a quid pro quo claim must provide evidence that, inter alia, his refusal to submit to unwelcome sexual demands resulted in a tangible job detriment and liability may be imputed to the employer. Bowman v. Shawnee State Univ., 220 F.3d 456, 461 (6th Cir.2000). “If the sexual harassment did result in a tangible employment action, the employer will be strictly liable for the supervisor’s sexual harassment.” Keeton v. Flying J, Inc., 429 F.3d 259 (6th Cir.2005). Thus, if there are issues of fact with respect to whether Sanford suffered a tangible job detriment caused by refusing Carter’s advances, his quid pro quo claim should survive summary judgment. Such issues of fact exist here.
In the quid pro quo context, tangible, or adverse, employment actions include “a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.” Bowman, 220 F.3d at 461-62. The majority concludes that Sanford’s quid pro quo claim fails because, out of all of the alleged actions taken against him, only the loss of his courtesy duties constituted a tangible employment action. The majority further concludes that because Marla Carter had already been terminated when Sanford lost his courtesy duties, Sanford could not have lost those duties as a result of his rejection of Carter’s sexual advances. In finding that only the loss of courtesy duties could constitute a tangible employment action, the majority states in conclusory fashion that the litany of actions Carter took against Sanford—including her “write-ups” of his alleged misconduct, her below-aver *603 age evaluation of him, and her allegation to a police officer that Sanford had stolen medication from a Manor resident—were not, in and of themselves, tangible employment actions. In so finding, the majority wrongly disaggregates Carter’s actions and ignores the causal connection between those actions and Sanford’s loss of courtesy duties.
Sanford has put forward evidence indicating that following his refusal of Carter’s sexual advances, Carter engaged in a course of conduct aimed at reducing Sanford’s responsibilities and his role at the Manor. The Manor asserts that Sanford lost his courtesy hours because Sanford was no longer on site to perform the courtesy duties at night after the property manager who replaced Carter moved into Sanford’s apartment. However, the decision to force Sanford out as a resident of the Manor could have been made partly because of a calculation on the part of the Manor that retaining Sanford as a resident was no longer desirable, a decision no doubt influenced by the various infractions Carter claimed Sanford had committed in recent months. The fact that Carter did not personally terminate Sanford’s courtesy duties does not mean that there was no causal connection between her actions and the Board’s decision to remove those duties. See Wilson v. Stroh Cos., Inc., 952 F.2d 942 (6th Cir.1992) (“[Rather than] whether the discriminatory motives of a supervisor can, as a matter of law, be imputed to an upper-level manager who makes the decision to terminate the employee[,] ... [t]he determinative question is whether [the plaintiff] has submitted evidence that [a supervisor’s] ... animus was a cause of the termination.”); see also Madden v. Chattanooga City Wide Serv. Dep't, 549 F.3d 666, 677 (6th Cir.2008) (employer’s decision to terminate plaintiff based on information supplied by supervisor out of discriminatory animus satisfies causal connection requirement). Thus, issues of fact exist with respect to whether Carter’s conduct caused Sanford’s loss of courtesy duties, a loss which the majority acknowledged would amount to a tangible employment detriment.
Sanford also argues that even prior to his loss of courtesy duties, he suffered a tangible detriment as a result of the negative performance evaluation given him by Cai'ter in August 2004—the detriment of not receiving full back pay for the raise he was due. The majority wrongly concludes that the failure to provide in full the back pay he was owed does not constitute an adverse employment action. Under our precedent, the deprivation of increased compensation which results when an employee receives a lower salary increase because of a negative evaluation constitutes an adverse employment action. White v. Baxter Healthcare Corp., 533 F.3d 381, 404 (6th Cir.2008) (collecting cases). Moreover, even if the deprivation is subsequently cured, the temporary deprivation could still be an adverse employment action. See White v. Burlington Northern & Santa Fe Ry. Co., 364 F.3d 789, 803 (6th Cir.2004) (employee’s thirty-seven day suspension without pay, followed by reinstatement with back pay, constituted adverse employment action).[1]
*604 On a performance evaluation dated August 9, 2004, Carter gave Sanford a performance rating that entitled him to a partial, rather than full, pay raise. On August 16, 2004, the Manor’s Board of Directors determined that Sanford was entitled to a full raise, which was to be retroactively applied. Sanford’s pay increase, however, did not take effect until the pay period beginning on August 31, 2004, rather than August 16, 2004 as scheduled. Sanford asserts that Carter gave him a negative performance evaluation that resulted in a score that did not qualify him for a full raise. Although the Board of Directors reversed Carter’s decision and applied a full raise retroactively, Sanford asserts that he did not receive the full raise until August 31, 2004 for his maintenance pay and September 15, 2004 for his courtesy pay. Given the economic consequences of the failure to institute a full and timely raise, Sanford has created a genuine issue of material fact regarding whether the failure to provide full back pay constituted an adverse employment decision. See Kauffman v. Allied Signal, Inc., Autolite Div., 970 F.2d 178, 187 (6th Cir.1992) (recognizing that there may be de minimis exception for temporary job detriments where no economic loss occurred). Moreover, Sanford asserts that this detriment was directly caused by Carter’s negative evaluation. This aspect of Sanford’s quid pro quo claim should therefore be left for trial as well.
Thus, not only are there issues of fact with respect to whether Carter caused Sanford to lose pay and courtesy duties, but the various actions Carter took to undermine Sanford’s role and reputation at the Manor while she was still his supervisor are part and parcel of his quid pro quo claim. I would therefore reverse the district court’s decision to grant summary judgment with respect to the entirety of Sanford quid pro quo claim. I would allow a jury to decide the extent to which Sanford suffered tangible job detriments, and the extent to which Carter was responsible for them. More generally, in cases such as this one, where the plaintiff brings three separate Title VII claims that are tangled up in one series of events, it simply does not make sense to disaggregate the claims and the subclaims as the majority opinion attempts to do. The jury should be given all of Sanford’s claims, and should be allowed to decide for itself which of those claims have merit.
In this vein, it is worth noting that regardless of the majority’s holding that several of Carter’s actions against Sanford were not tangible employment actions for the purpose of his quid pro quo claim, evidence of those actions will constitute an essential part of Sanford’s case at trial, when he will present his hostile work environment and retaliation claims to the jury. For example, the removal of Sanford’s pager, the negative write-ups and the decision to have Sanford move out of his apartment in just two weeks are all relevant to his retaliation claim. The majority opinion properly recognizes this by reversing the district court with respect to the entirety of Sanford’s retaliation claim. It should be reiterated that on remand, the district court should not look to this Court’s rejection of Sanford’s quid pro quo claim as a basis for rejecting evidence of the actions underlying that claim. In reality, all of Sanford’s claims revolve around the same narrative, in which he was harassed, he resisted his harasser, he complained about the harassment, and he subsequently lost pay and his main job responsibilities. Evidence which supports that narrative will be relevant and admissible at trial, unless *605 excludable for some other reason. See Old Chief v. United States, 519 U.S. 172, 187, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (“Unlike an abstract premise, whose force depends on going precisely to a particular step in a course of reasoning, a piece of evidence may address any number of separate elements, striking hard just because it shows so much at once[.] ... [As [the] pieces [of evidence] come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.”).
In sum, I concur in the majority opinion except for Part III.B.2, from which I dissent.

. Although the plaintiff in White brought a retaliation claim, retaliation claims at the time of the decision required a similar “adverse employment action” that quid pro quo claims require today. See 364 F.3d at 797-98. Thus, while the Supreme Court granted certiorari and in its decision announced the current, broader standard for retaliation claims, see Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68-70, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), this Court’s decision in White remains a valid precedent for finding that a suspension without pay, followed by a reinstatement with back pay, *604 could constitute an adverse employment action.