**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3272
_____

TRACY SZYPER,
                                        Appellant
v.

AMERICAN MEDICAL RESPONSE MID-ATLANTIC, INC.;
AMERICAN MEDICAL RESPONSE, INC.;
LESLIE BROCK, as aider and abettor
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-20-cv-04642)
District Judge: Honorable Chad F. Kenney
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 2, 2023
_____

Before: HARDIMAN, KRAUSE, and MATEY, Circuit Judges.

(Filed: March 22, 2023)
_____

OPINION[*]
_____

_____

[*]This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Tracy Szyper appeals the District Court's grant of summary judgment denying her gender discrimination claims against American Medical Response ("AMR") and Leslie Brock. Because the District Court correctly found the alleged harassment was not severe or pervasive enough to create a hostile work environment, we will affirm.

**I.**

AMR hired Szyper to work as an emergency medical technician. **App. 82.** About a month after Szyper started, Leslie Brock, a more senior employee, grabbed Szyper's wrist and made two crude and offensive sexual comments.[1] **App. 213–14.** Szyper filed a complaint and was interviewed by Daniel Brown, AMR's operations manager in charge of AMR's Essington Avenue location, and Sonsaraye Byers, an AMR human resources generalist. **App. 92, 271.** Szyper alleged no other incidents of harassment by Brock or any other AMR employees.

Byers recommended Brock's termination. **App. 169–170.** Brown preferred sanctions short of firing, a conclusion shared by Edward Powers, the AMR regional director responsible for Brock's discipline. **App. 60–61.** AMR issued Brock a "Final Written Warning" for inappropriate behavior, punishment just short of termination. App.

---

[1] Szyper documented the incident in a report recounting that "Brock had told me to cover my ears. I looked at him & said jokingly 'I'm not listening to you anyway.' He asked me again to cover my ears. I cupped my hands over my ears but could still hear what was said. Brock said to [two other employees], 'that made my dick hard.' I uncupped my hands and told him I heard what he said. Brock then proceeded to grab me by my wrist and say something along the lines of 'Help me fix my problem.' I told him to 'get the fuck off me.' I proceeded to put my cigarette out and go back inside. This incident made me feel extremely uncomfortable." App. 213–14.

209. Szyper resigned from AMR as a result, stating she could not continue working with Brock. **App. 277.**

Szyper sued AMR under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951, *et seq.* ("PHRA"); and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1100, *et seq.* ("PFPO"), alleging that the incident created a hostile work environment. She also sued Brock under the PHRA and PFPO, alleging that he aided and abetted AMR's sex discrimination. The District Court granted the Defendants' motions for summary judgment on all claims "because the record evidence, even when viewed in the light most favorable to Plaintiff, does not establish that the alleged harassment was sufficiently 'severe or pervasive' to rise to the level of a Title VII or PHRA violation." App. 9. Szyper appeals.[2]

## II.

"Under Title VII, an employer may not 'discharge [or] . . . discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's . . . sex.'" *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (quoting 42 U.S.C. § 2000e-2(a)(1)). Title VII prohibits sexual harassment in the workplace that is "sufficiently severe or

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331 and § 1367 and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment *de novo* and affirm if the record contains no genuine issue of material fact. *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). We view the facts in the light most favorable to the nonmoving party, drawing "reasonable inferences" in her favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

3

pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (citation and quotation marks omitted). Hostile work environment claims require a "plaintiff [to] establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted).[3]

We agree with the District Court that Szyper did not show that Brock's conduct was sufficiently "severe or pervasive" as to "alter the conditions of [her] employment and create an abusive working environment." *Meritor Sav. Bank, FSB*, 477 U.S. at 67 (citation and quotation marks omitted). When assessing hostility or abusiveness, courts must look "at all the circumstances," such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (citation omitted). "[O]ffhand comments[ ] and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 788.

---

[3] Hostile work environment claims under the PHRA and the PFPO are governed by the same standards as Title VII claims. *See, e.g.*, *Huston*, 568 F.3d at 104 n.2.

4

Szyper complains of one instance of offensive conduct and concedes that Brock never acted inappropriately toward her before or after. **App. 214.** As the incident was isolated, the conduct must have been "extremely serious" to create a hostile work environment. *Id.* Szyper has not shown that. The circumstances reveal an unquestionably offensive and distasteful action by a more senior employee. But courts have regularly held that more severe actions fall short of the severity required by Title VII. *See, e.g.*, *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463–65 (6th Cir. 2000) (supervisor's offensive touching not severe enough to create hostile work environment); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361–62 (7th Cir. 1998) (supervisor's four incidents of improper contact and sexual comments to subordinate did not establish a hostile work environment).

Considering all material facts and drawing reasonable inferences in Szyper's favor, the District Court correctly concluded that "[l]ooking at the totality of the circumstances in this case, the single incident alleged was not severe enough to be sexual harassment." App. 12. So summary judgment to AMR was proper because Szyper's sex-based hostile work environment claims fail under Title VII—and thus also under the PHRA and PFPO. *Huston*, 568 F.3d at 104 n.2. And because those claims served as predicate violations for her PHRA and PFPO claims against Brock, summary judgment was proper for them as well. *See* 43 Pa. Cons. Stat. § 955(e) (prohibiting the aiding or abetting of "any act declared by this section to be an unlawful discriminatory practice").

## III.

For these reasons, we will affirm.