**Vicki S. PEAKE,**

v.

**Les BROWNLEE, Acting Secretary, United States Department of the Army.**

No. 3:02–0656.

United States District Court, M.D. Tennessee, Nashville Division.

Dec. 18, 2003.

James E. Goodman, Goodman & Associates, P.C., Atlanta, GA, for Vicki S. Peake.

Karen A. Rivera, Department of Justice, Civil Division, Steven Y. Bressler, Department of Justice, Civil Division, Washington, DC, for Les Brownlee, Acting Secretary, United States Department of the Army.

### MEMORANDUM

ECHOLS, Chief Judge.

Pending before the Court is Defendant's Motion for Summary Judgment of Plaintiff's sexual harassment and retaliation claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Docket Entry No. 63).

### I. PROCEDURAL HISTORY

Plaintiff filed this lawsuit on July 12, 2002, against her employer, Les Brownlee, as Acting Secretary, U.S. Department of the Army, alleging unlawful sexual harassment, discrimination, and hostile work environment (Count One), as well as discriminatory retaliation for filing an Equal Employment Opportunity ("EEO") complaint (Count Two), both in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Plaintiff alleges that she has suffered mental and physical injuries, loss of pay, loss of benefits, loss of training, loss of promotion and transfer opportunities, and loss of leave time. Plaintiff seeks back pay and benefits, with interest; front pay and benefits; compensation for any negative consequences under the tax code of receiving a lump sum award for front and back pay in a single year; compensatory damages; unspecified special damages; and her attorney's fees. The Court has federal question jurisdiction over this lawsuit. *See* 28 U.S.C. § 1331.

Defendant moved for summary judgment on October 2, 2003, averring that Plaintiff has adduced no genuine issue of material fact to establish a prima facie case of either her sexual harassment or retaliation, and that judgment as a matter of law is warranted. After obtaining extensions, Plaintiff responded to Defendant's Motion on November 10, 2003. (Docket Entry No. 84). This case is set for jury trial on January 20, 2004.

### II. PLAINTIFF'S ALLEGATIONS

#### A. Background

Plaintiff, a resident of Tennessee, began working at Fort Campbell, Kentucky, as a civilian employee on July 7, 1997. At the time of the events at issue in this lawsuit, Plaintiff was employed as a GS–9 Facilities Utilization Specialist with the Master Planning Branch, Engineering Division, of the Public Works Business Center at Fort Campbell. Apparently, Plaintiff remains employed in that capacity.

Plaintiff's sexual harassment allegations involve conduct by Joseph Galluzzo, a co-worker who worked as an engineer in the

same office from May 1992 until retiring in October 2000. Galluzzo retired of his own will, without being asked to do so, on account of vision problems. It is undisputed that Galluzzo has been diagnosed as bipolar and has been taking the drugs Lithium and Depakote to treat that condition since at least 1995.

In addition to Galluzzo, Plaintiff's sexual harassment allegations concern another employee, William Sale, who worked as a copy technician in a different office at the Public Works Business Center at Fort Campbell. It is undisputed that Sale has inappropriately touched females and displayed sexually explicit magazines at work, brought girlfriends to work, and once was found with his hands on his genitals (whether clothed or unclothed is unclear). Plaintiff alleges that the women Sale brought to work were prostitutes, that Sale had "phone sex" at work, and that he was caught masturbating in public at work. However, Plaintiff did not witness any of this alleged conduct, and Plaintiff's citations in support of these allegations do not contain any statements founded on firsthand knowledge.[1] Plaintiff bases these allegations—whose materiality is highly questionable in the first place—on inadmissible hearsay. Accordingly, the allegations concerning Sale will not be considered.[2] *See Leibovitz v. New York City Transit Auth.,* 252 F.3d 179, 189–90 (2d Cir.2001) which states:

The only way to characterize [plaintiff]'s environment as hostile or abusive is by expanding the concept of environment to include venues in which she did not work. Such a characterization would open the door to limitless employer liability, and allow a recovery by any employee made distraught by office gossip, rumor or innuendo. In short, [plaintiff] presented no evidence that her own working environment was hostile, and failed to allege or prove that harassment of other women adversely affected the terms and conditions of her own employment. We hold that [plaintiff]—who was not herself a target of the alleged harassment, was not present when the harassment supposedly occurred, and did not even know of the harassment while it was ongoing—failed to prove that an environment existed at work that was hostile to her because of her sex.

**B. Plaintiff's Allegations of Sexual Harassment and Hostile Work Environment**

The first incident of alleged sexual harassment and/or hostile work environment cited by Plaintiff occurred on April 14, 1994, when Galluzzo yelled at another female employee, Mary Dacey, "followed by him putting his face in Ms. Dacey's face and viciously saying, 'I'll knock your face to the ground' as he put his fist up as if to hit her and growled." (*See* Docket

1. A supervisor, Richard Huser, testified in his deposition that employees complained about Sale masturbating at work, but that there was insufficient evidence to support the charge.

2. The Court notes that many of Plaintiff's purported statements of fact in reality are either immaterial or argumentative statements or legal conclusions that are not facts at all. As examples of the former, Plaintiff mentions that "the first incident [of harassment, presumably] known to Plaintiff was an

incident involving Mr. Galluzzo and his first wife. Mr. Galluzzo picked up a chair and either hit his wife in the head with it or threw the chair at his wife, hitting her in the head. Mr. Galluzzo was arrested and taken to jail." (*See* Docket Entry No. 84, at 3). Clearly, this statement, which concerns an alleged event that apparently occurred roughly 35 years ago, outside of the workplace, between Galluzzo and his first wife, is immaterial to Plaintiff's allegations of workplace harassment.

Entry No. 84, at 4). It is undisputed that Plaintiff received a five-day suspension without pay for that incident, which commenced on June 27, 1994. Plaintiff alleges vaguely in her Response that "[t]he Mary K. Dacey incident was followed in 1994 and 1995 by other documented incidents with female employees," and then lists the names of four other female employees whom Galluzzo allegedly harassed, as well as the dates in 1994 and 1995 on which he allegedly harassed them. (*See id.*) According to Plaintiff, Galluzzo received a formal reprimand for only one of these alleged incidents. However, Plaintiff does not dispute Defendant's assertion of at least two reprimands or disciplinary measures. It is undisputed that on August 21, 1995, Galluzzo's supervisor in the Environmental Division, Neal Smith, requested disciplinary action against Galluzzo on the basis of the aforementioned "incidents." Plaintiff also does not dispute that Galluzzo received a formal reprimand on September 26, 1995, for the "incident" with Sergeant Martinez. Defendant points out that an "incident" also occurred between Galluzzo and a male supervisor, Richard Huber.[3]

The first incident of alleged harassment involving Plaintiff occurred on October 27, 1998, when Plaintiff exited her supervisor's office and said "Next" to Galluzzo, who was waiting to enter the office. According to Plaintiff, Galluzzo approached to within six inches of her face and shouted "with rage" "Next? There is no next." (*See id.* at 4). Defendant characterizes Galluzzo's tone as "gruff." (*See* Docket Entry No. 64, at 5). Plaintiff reported this incident to her supervisors. It is unclear whether Galluzzo was formally counseled for this incident. Plaintiff contends that he was not; Defendant alleges that he was. It appears at the least that a supervisor, Mr. Huber, spoke to him about "the [G]olden [R]ule" in response to Plaintiff's complaint about the incident. (*See* Galluzzo Dep., Docket Entry No. 88, at 100). After the incident, two supervisors, Mr. Huber and John Culver, contacted Michael Collins, a counselor and manager of the employee assistance program with responsibility for the Public Works Business Center at Fort Campbell. After discussing Galluzzo's behavior with the supervisors, Collins expressed his opinion that Galluzzo was not violent.[4] Huber and Culver shared that opinion with Plaintiff.

The second incident[5] of alleged harassment occurred on September 28, 1999, when Galluzzo entered Plaintiff's office with questions about information she had provided him. Galluzzo waived papers in Plaintiff's face and demanded the informa-

---

**3.** Plaintiff does not mention any of these alleged incidents in her Statement of Material Facts as to Which There Exist Genuine Issues to Be Tried (Docket Entry No. 87), and in her Response she cites only to her own deposition in support of this allegation. Although Plaintiff's assertion of these allegations for the first time in her Response arguably fails to conform to Local Rule 8(b)(7)(b), Defendant does raise these allegations in its own Statement of Material Facts. Therefore, to the extent the allegations are not hearsay, the Court will consider them.

**4.** Collins has testified that it was not until this lawsuit that he knew of the allegations against Galluzzo from 1994 and 1995, and that he might have more seriously considered Galluzzo's possible propensity to violence had he known of them. Collins was never asked to reconsider his opinion about Galluzzo in light of later alleged incidents.

**5.** Plaintiff now alleges that another incident of harassment occurred on November 2, 1998, when Plaintiff alleges that she overheard Galluzzo saying repeatedly "I hate Vicki" in his office. According to Plaintiff, she was afraid of Galluzzo by that time. However, Plaintiff did not include this allegation in her Complaint and has not sought to amend the Complaint to include it.

tion. After Galluzzo refused Plaintiff's repeated requests that he leave her office, Plaintiff ran out of her office and went to the Deputy Director of the Public Works Business Center, Judith Hudson. Defendant has stated that Plaintiff was visibly upset at the time. Plaintiff reported the incident in a memorandum the next day and requested relocation or reassignment within the Public Works Business Center for herself or Galluzzo.

It is undisputed that on the next day, September 29, Mr. Huser counseled Galluzzo about the incidents with Plaintiff and told him to submit future requests · for information through a supervisor.

The next day, September 30, 1999, Galluzzo confronted one of his supervisors, Larry Martin, demanding in a belligerent manner several inches from his face that they meet immediately instead of later in the day. That day, Martin also counseled Galluzzo about these incidents and told him to find training to help improve his ability to work with others.

On October 1, 1999, Plaintiff (at her request) was moved from Building 865 to the Public Works Business Center's computer room in Building 868. On October 22, 1999, Galluzzo entered the computer room where Plaintiff then worked. Defendant avers that he was looking for Richard Adams, a computer technician, and Galluzzo stated in his deposition that he did not know Plaintiff would be there and was surprised to see her. Plaintiff denies that the proffered reason of seeking a computer technician was the motivation for Galluzzo's visit and alleges that when he entered the room, he stood behind Plaintiff and stared at her for several moments without announcing his presence. According to Plaintiff, when other employees entered the room and Plaintiff became aware of Galluzzo's presence, he left without speaking. Plaintiff complained about this inci-

dent to her supervisor, Larry Martin. Martin accepted Galluzzo's explanation that he was looking for a computer technician to help with his computer and did not discipline Galluzzo, but did order him to stay away from the computer room.

On October 25, 1999, Plaintiff filed an EEO Initial Interview Data Sheet alleging sexual discrimination and harassment by Galluzzo and that the Public Works Business Center had failed to properly document the, allegations and had created a hostile work environment. Plaintiff filed a formal EEO complaint on January 4, 2000.

On February 11, 2000, Defendant suspended Galluzzo for five days without pay, effective February 28, for the September 1999 incident in Plaintiff's office, a September 1 incident with another female employee, and the September 30 incident with Mr. Martin.

## C. Plaintiff's Allegations of Retaliation

In the spring of 2000, Defendant decided that Plaintiff had to return to work in Building 865. According to Defendant, her remote location in the computer room of another building was affecting the Master Planning Branch's ability to perform its job, and Plaintiff was raising concerns that she was being left out of work. Plaintiff rejects Defendant's characterization of the motives for the decision. Between March and August 2000, Plaintiff rejected requests that she return to Building 865. Plaintiff alleges she was afraid of Galluzzo.

Plaintiff alleges that adverse employment actions occurred on March 30 and 31, 2000, when Martin allegedly excluded her from two meetings. Plaintiff further complains of the fact that no one in the Public Works Business Center congratulated her for receiving an award on April 10, 2000. Plaintiff also complains that management allegedly did not respond adequately to

her telephone and email messages concerning work projects.

On March 22, 2000, supervisor Martin directed Plaintiff to return to Building 865 before March 31. Plaintiff alleges that this constituted an adverse employment action and was meant as reprisal for Plaintiff's EEO complaint. Plaintiff filed another EEO complaint on March 31, 2000, alleging reprisal. While the complaint was under investigation, she was allowed to remain in Building 868. On August 11, Plaintiff was ordered to report back to Building 865 by August 23. Plaintiff acceded to the demand and returned to Building 865 on August 28, 2000. Plaintiff alleges that she was shunned after she returned to Building 865 and that no office space was made ready for her on her first day back. Plaintiff met with the officer in charge of her branch, Colonel Bailey, on August 31, 2000, to ask to be transferred back to Building 868. The Colonel denied her request but granted Plaintiff leave and authorized Plaintiff to meet with the garrison commander to discuss her problems. Plaintiff met with Colonel Fitzgerald on September 12, 2000.

Plaintiff returned to work in Building 865 on September 13, 2000. Plaintiff filed a Letter to Amend her EEO complaint on September 18, 2000, to allege sex discrimination, reprisal, and mental/physical disability.

Plaintiff alleges that she suffered an additional adverse employment action on October 27, 2000, when supervisor Martin assigned certain job duties that had been Plaintiff's to a contractor. Plaintiff also complains of the fact that Martin cancelled Plaintiff's planned participation in a training class in Mississippi on January 28, 2001. However, it is undisputed that Plaintiff was later granted leave to attend the class. Plaintiff complains that she was

excluded from several other meetings between March and May of 2001.

Finally, Plaintiff alleges that between June 10, 1999, and March 5, 2002, she applied and was rejected for fourteen positions despite being qualified.

### III. STANDARD OF REVIEW UNDER RULE 56

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n. 4 (6th Cir.1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. If so, summary judgment dismissal is inappropriate.

To defeat a properly supported motion for summary judgment, an adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R.Civ.P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue for trial is triggered once the moving party "show[s]—that is, point[s] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S.

317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. ANALYSIS

### A. Plaintiff's Sexual Harassment Claims

Title VII prohibits employers from "discriminat[ing] against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

Sexual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)) (quoting *Meritor Savings Bank*, 477 U.S. 57, 67, 106 S.Ct. 2399 (some inter-

nal quotation marks omitted)); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (finding that only harassing conduct that is "severe or pervasive" can produce a "constructive alteratio[n] in the terms or conditions of employment"); *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (stating that Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment").

"Workplace conduct is not measured in isolation." *Breeden*, 532 U.S. at 270, 121 S.Ct. 1508. Rather, "whether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 270–71, 121 S.Ct. 1508 (quoting *Faragher*, 524 U.S. at 787–88, 118 S.Ct. 2275 (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367)). "A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions' of employment." *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275.[6]

---

**6.** As the Court explained in Harris:

This standard, which we reaffirm today, takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury. As we pointed out in *Meritor*, "mere utterance of an ... epithet which engenders offensive feelings in a employee," does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environ-

ment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation. But Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees'

Interpreting recent Supreme Court precedent, the Sixth Circuit has held that:

In order for a plaintiff to establish a *prima facie* Title VII claim of hostile environment sexual harassment by a co-worker, she must demonstrate that the following elements of the statutory tort are present: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; *and* (5) the employer knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action.

*Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829–30 (6th Cir.1999) (citing *Ellerth*, 524 U.S. 742, 118 S.Ct. 2257; *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872–73 (6th Cir.1997)). In this Circuit, "when an employer responds to charges of coworker sexual harassment, the employer can be liable only if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Id.* at 829 (citing *Blankenship*, 123 F.3d at 872–73).

### 1. Plaintiff Cannot Establish a Prima Facie Case of Harassment

■ Plaintiff has not made a prima facie showing that (1) the complained of conduct was directed at her because of her sex; (2) that the alleged harassment was so pervasive or severe as to create a hostile work environment; or that (3) Defendant failed

unreasonably to take prompt remedial action.

### 1. Plaintiff did not suffer harassment because of her sex

"Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discriminat[ion] ... *because of* ... sex." *Oncale*, 523 U.S. at 80, 118 S.Ct. 998 (emphasis added); *see EEOC v. Harbert–Yeargin, Inc.*, 266 F.3d 498, 520 (6th Cir.2001) (stating that "Title VII is not a generic anti-harassment statute"); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir.2000) (stating that "it is important to distinguish between harassment and *discriminatory* harassment in order to 'ensure that Title VII does not become a general civility code'") (quoting *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275) (emphasis added). Given the absence of any alleged overtly sexual remarks or conduct in this case, Plaintiff must produce evidence sufficient to create an inference that the conduct occurred "because of" her sex. *See Bowman*, 220 F.3d at 464 (affirming dismissal of plaintiff's sexual harassment claim because "[w]hile [plaintiff] may have been subject to intimidation, ridicule, and mistreatment, he has not shown that he was treated in a discriminatory manner because of his gender"); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565–66 (6th Cir.1999) (finding that "myriad instances" of ostracization, combined with "gender-specific epithets ... such as 'slut' and 'fucking women,' create an inference sufficient to survive summary judgment, that [plaintiff's] gender was the motivating impulse for her co-workers' behavior"). Such conduct may include "gen-

---

job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it

created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.

510 U.S. at 21–22, 114 S.Ct. 367 (internal citations omitted).

der-specific epithets," *Bowman*, 220 F.3d at 464, other comments or behavior "charged with anti-female animus," *Williams*, 187 F.3d at 565, or other behavior directed against only one sex, *id.*

■ Plaintiff has failed to adduce any evidence to support an inference that the complained-of conduct in this case occurred because of her sex. Plaintiff does not allege, nor is there any evidence to indicate, that Galluzzo ever propositioned her sexually, touched her in a sexual manner (or touched her at all), called her any derogatory names, or in any other way directly or indirectly conveyed to Plaintiff any animus against women specifically. The six specific incidents of Galluzzo's behavior of which Plaintiff complains involve him staring at her without comment, muttering to himself that he hated Plaintiff, or yelling at Plaintiff or shaking papers in her face concerning a work-related issue. While the evidence in the record concerning these incidents and others might sup-

port an inference that Galluzzo is ill-tempered, perhaps even misanthropic, there is no evidence to establish a prima facie inference that the several instances of allegedly harassing behavior toward Plaintiff occurred because of her sex.[7] *See Clements v. North American Stainless*, 277 F.Supp.2d 705 (E.D.Ky.2001) (male would regularly get close to woman's face and yell at her, and allegedly harassed other women, but "[t]he types of behavior of which [plaintiff] complains indicates a personal conflict between [defendant and plaintiff] and not any problem with having ... women in the workplace"). Moreover, Defendant has introduced undisputed evidence that Galluzzo behaved in a similar manner toward two supervisors, Larry Martin[8] and Richard Huber, and another male employee, Vernon Kennedy. Therefore, the Court finds that Plaintiff has failed to establish the first element of a prima facie case of sexual harassment un-

---

**7.** Plaintiff alleges that Galluzzo's testimony in his deposition that he "probably" did not get upset at male clerks is evidence of anti-female animus. However, this allegation is baseless in light of Galluzzo's explanation for the comment: he could not recall getting upset at male clerks because "[t]here aren't many males working as clerks really" in his office and he "didn't come across any." (*See* Galluzzo Dep., Docket Entry No. 88, at 158–59).

**8.** Plaintiff alleges that because Martin testified that he was not upset by Galluzzo's outburst towards him and did not have a problem with him, this incident somehow should not be considered as evidence of animosity and harassment by Galluzzo against other males. However, Martin's subjective response to the conduct is irrelevant to the fact that it occurred.

Plaintiff's additional evidence for anti-female animus by Galluzzo is insufficient to establish the first element of a prima facie case for harassment. Plaintiff cites Galluzzo's comment, undisputed by Defendant, made in 1995, that women tend to run to their supervisor when they have a problem. The Court not believe that this comment

standing alone is evidence of a misogynistic outlook, *see Bryant v. Martinez*, 46 Fed.Appx. 293, 2002 WL 31007870 (6th Cir. Sept.5, 2002) (unpublished) (finding that supervisor's statement that women do not succeed in management jobs did not rise to the level of conduct necessary to establish that it was "because of" sex), and certainly it does not rise to the level of the epithets that the Sixth Circuit has ruled may constitute prima facie evidence, *see Williams*, 187 F.3d at 565–66 (comments included "gender-specific epithets ... such as 'slut' and 'fucking women'"). Moreover, this comment cannot establish a prima facie case because its is the sort of isolated comment the Sixth Circuit has rejected as not actionable under Title VII. *See Anderson v. Memphis City Sch. Bd. of Educ.*, 75 F.Supp.2d 786, 793 (W.D.Tenn.1999) (stating that "[t]he use of racial slurs three or four times over a fifteen year period, while loathsome, constitutes the sort of 'offhand comments and isolated incidents' that are not actionable under Title VII'") (quoting *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275).

der Title VII.[9]

## 2. The alleged harassment was not sufficiently pervasive or severe to create a hostile work environment

■ While the foregoing conclusion alone would compel dismissal of Plaintiff's harassment claim, the Court also finds that Plaintiff has failed to satisfy a second element of a prima facie case, the existence of a hostile work environment.

In order to find a hostile work environment, "[b]oth an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Bowman*, 220 F.3d at 463 (citing *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367); see *Faragher*, 524 U.S. at 787, 118 S.Ct. 2275. The Sixth Circuit has explained the factors to be considered in determining whether a plaintiff has established the existence of a hostile work environment as part of her prima facie case:

> The court must consider the totality of the circumstances when determining whether, objectively, the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. "[T]he issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents

make out such a case." The work environment as a whole must be considered rather than a focus on individual acts of alleged hostility. Isolated incidents, however, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Id.* (internal quotations and citations omitted).

In this case, the six incidents involving Galluzzo occurred over a period of 22 months. They are the sort of "isolated incidents" which the Supreme Court and Sixth Circuit have held do not amount to discriminatory changes in the terms and conditions of employment. *See, e.g., Clark County Sch. Dist.*, 532 U.S. at 271, 121 S.Ct. 1508; *Morris*, 201 F.3d at 790. For example, in *Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir.2000), the Sixth Circuit held that three incidents over six months did not qualify as "commonplace, ongoing, or continuing," *id.* at 984, and therefore were not sufficiently pervasive to establish

**9.** The Sixth Circuit has held that conduct was not "because of" a plaintiff's sex on the basis of facts much stronger than those at issue here. *See, e.g., Harbert–Yeargin*, 266 F.3d 498 (a man would frequently touch another man all over his body, including "goosing" his genitals and buttocks; this never happened to any of the three women employed at the plant, but the conduct was not "because of" sex); *Bowman*, 220 F.3d 456 (a female supervisor grabbed a male's buttocks, touched his chest and pushed him, rubbed his shoulder until he jerked away, and invited him into a whirlpool, but no comments evinced gender-based animus and conduct not "because of" sex); *Morris*, 201 F.3d 784 (male made sexual jokes, called plaintiff "hot lips," suggested that sexual favors would improve her job rating and, in alleged retaliation for complaints plaintiff filed, made harassing phone calls, followed her home, and threw roofing nails on her driveway, but conduct was not "because of" sex).

a genuine issue of material fact.[10] *See Black v. Zaring Homes, Inc.*, 104 F.3d 822 (6th Cir.1997) (reversing jury verdict for plaintiff who alleged she was subjected to a hostile work environment; finding on appeal that despite allegations that plaintiff was subjected to various discriminatory comments and sexual innuendo at biweekly meetings from July to October 1993, told that she "was paid great money for a woman," and referred to as a "broad," defendant was entitled to judgment as a matter of law because under the totality of the circumstances the comments were merely offensive and were therefore insufficient to support the jury's verdict, and deeming important the fact that "most of the comments were not directed at plaintiff"); *Mast v. IMCO Recycling of Ohio, Inc.*, 58 Fed.Appx. 116, 2003 WL 247109 (6th Cir. Feb.3, 2003) (unpublished) (holding that "three or four incidents over several months" not sufficiently severe or pervasive, even though they included "offensive comments directed at women in general" and an assault against plaintiff); *see also; Farra v. Gen. Motors Corp.*, 163 F.Supp.2d 894 (S.D.Ohio 2001) (16 alleged incidents involving verbal abuse, vulgar gestures, and threatening behavior over 20 months not severe or pervasive enough to establish prima facie case of hostile work environment); *Anderson*, 75 F.Supp.2d at 793 (allegations that harasser brushed against plaintiff, made sexually suggestive comment, cursed and yelled at her, raised his hand as if to hit her, and disconnected her phone call to a doctor not sufficiently severe or pervasive to present issue of fact for jury); *cf. Williams*, 187 F.3d at 565 (finding hostile work environment where, "there were fifteen separate allegations of sexual harassment over a period of one year that ... included derogatory and profane remarks directed at the plaintiff, sexually explicit comments directed at plaintiff, offensive comments directed at women in general, denial of plaintiffs overtime, and the exclusion of plaintiff from certain workplace areas"); *Petty v. DHL Airways, Inc.*, 176 F.Supp.2d 773 (S.D.Oh. 2001) (physical invasion including harasser's genital contact with plaintiff, plus commonplace, ongoing, continuing verbal harassment presented an issue of fact concerning severity and pervasiveness of conduct).

■ Employing the objective test suggested by the Supreme Court and Sixth Circuit, *see Bowman*, 220 F.3d at 463 (citing *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367); *Faragher*, 524 U.S. at 787, 118 S.Ct. 2275, and considering the totality of the circumstances, including the fact the frequency of the alleged discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interfered with Plaintiff's work performance, the Court finds that the conduct at issue was not severe or pervasive enough to constitute a hostile work envi-

---

**10.** In *Burnett*, the Sixth Circuit distinguished *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246 (6th Cir.1998), in which the court considered alleged incidents concerning the president's sexual interest in other women, including a model he hired for a photo session in order to meet her, and various other comments that "were not sexual in nature but arguably reflect degrading gender stereotyping," and reversed the district court's award of summary judgment to TransAmerica, holding that the "District Court's analysis omits the plaintiff's claim that Katz's sexual comments were 'commonplace,' 'ongoing,' and 'continuing'" and that the "omission [was] critical." 159 F.3d at 252. In the instant case, however, as in *Burnett*, Plaintiff "does not allege that [Galluzzo's] conduct was commonplace, ongoing, or continuing. Indeed, [six] alleged instances spread out [over a period of several years] are not commonplace, ongoing, or continuing, and are therefore less pervasive than the discriminatory conduct in *Abeita*." 203 F.3d at 983.

ronment, and therefore that Plaintiff has not met this element of her prima facie case under Title VII.[11]

### 3. Even assuming arguendo that the alleged harassment was "because of" Plaintiff's sex and was sufficiently pervasive or severe to create a hostile work environment, Defendant cannot be liable because it did not fail unreasonably to take prompt remedial action

■ In addition to the previously discussed elements of a prima facie claim, a plaintiff suing for sexual harassment under Title VII must show that "the employer knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action." *Fenton*, 174 F.3d at 830. This element too is lacking from Plaintiff's prima facie case.

First, to the extent Plaintiff alleges that Defendant did not take prompt corrective action in response to conduct by Galluzzo involving others, it is undisputed that on August 21, 1995, Galluzzo's supervisor in the Environmental Division, Neal Smith, requested disciplinary action against Galluzzo on the basis of incidents involving workers other than Plaintiff, and that Gal-

luzzo received a formal reprimand on September 26, 1995, for an incident with a female Sergeant. In response to Plaintiff's first complaint about Galluzzo, a supervisor, Mr. Huber, spoke to him about "the [G]olden [R]ule." Further, two supervisors, Mr. Huber and John Culver, contacted Michael Collins, a counselor and manager of the employee assistance program with responsibility for the Public Works Business Center at Fort Campbell. After discussing Galluzzo's behavior with the supervisors, Collins expressed his opinion that Galluzzo was not violent. Huber and Culver shared that opinion with Plaintiff.

It is undisputed that after the second incident of which Plaintiff complains, which occurred on September 28, 1999, Huser counseled Galluzzo about the incidents with Plaintiff and another employee. The following day, September 30, Martin also counseled Galluzzo about his conduct towards a male supervisor and told him to find training to help improve his ability to work with others.

On October 1, 1999, Plaintiff (at her request) was moved to another office, away from Galluzzo. In response to Plaintiff's subsequent complaint that Galluzzo had visited her office space, supervisor Martin

---

**11.** The Court notes that to the extent Plaintiff predicates her prima facie claim on allegations of conduct by Galluzzo against others, out of Plaintiff's presence and work space, such allegations cannot support submitting a hostile work environment claim to a finder of fact. *See Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 189 (2d Cir.2001) (where "[i]t was conceded that much of the alleged harassment did not occur in plaintiff's immediate vicinity and much of what she knew about the situation was second- or third-hand" and "[i]n fact, [plaintiff] witnessed none of the harassment ...," then "[e]ven assuming that [plaintiff] could claim to share the same 'environment'—broadly conceived— as the women allegedly harassed, [plaintiff] failed to demonstrate that their harassment

adversely affected the terms and conditions of her own employment; ... no such broad conception of the working environment is sustainable in this case. The women who were allegedly harassed were working in another part of the employer's premises, out of [plaintiff's] sight and regular orbit; ... the experiences of those women came to [plaintiff's] notice via hearsay (and were not proved). In these circumstances, plaintiff cannot demonstrate that she suffered harassment either in subjective or objective terms. In terms of the objective impact of the harassment alleged, that harassment might as well have been going on in a nearby office of another firm, or been the subject of an infuriating newspaper article, or been a false rumor of a kind that would be upsetting if true").

accepted Galluzzo's explanation that he was looking for a computer technician to help with his computer and did not discipline Galluzzo, but did order him to stay away from the computer room.

On February 11, 2000, Defendant suspended Galluzzo for five days without pay, effective February 28, for the September 1999 incident in Plaintiff's office, a September 1 incident with another female employee, and the September 30 incident with Mr. Martin.

The Court finds that Defendant's actions in response to Plaintiff's complaints constituted prompt and reasonable corrective action as a matter of law. *See Fenton,* 174 F.3d at 831 (holding that speaking with alleged harasser and telling him to cease conduct or face discipline constituted reasonable, good faith response). Nor was it unreasonable of Defendant to move Plaintiff to another office and eventually require her to move back. *See Blankenship v. Parke Care Centers, Inc.,* 123 F.3d 868, 874 (6th Cir.1997) (finding it did not violate Title VII for employer to tell plaintiff she must work in same building with harasser once employer took steps to end harassment). Moreover, according to the Sixth Circuit, "[w]hen an employer implements a remedy, it can be liable for sex discrimination in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination." *Blankenship,* 123 F.3d at 873. Therefore, the Court finds that even assuming arguendo that Plaintiff had established a prima facie case of harassment because of her sex, so severe or pervasive as to constitute a hostile work environment, Defendant took prompt and reasonable remedial action. Accordingly, the Court will grant Defendant's request for summary judgment on Plaintiff's Title VII sexual harassment claims.

**B. Plaintiff's Retaliation Claims**

Title VII prohibits an employer from discriminating against an employee who "has opposed any practice made an unlawful employment practice ... or ... made a charge, testified, assisted, or participating in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Proof of retaliation is governed by the same burden-shifting analysis of disparate treatment claims established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. *See Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir.2000).

In order to establish a prima facie case of retaliation, plaintiff must establish the following elements: (1) that she engaged in protected activity; (2) that defendant knew of this exercise of her protected rights; (3) that defendant consequently took an employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Hi-SAN,* 174 F.3d at 831 (citing *E.E.O.C. v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir.1997)).

If a plaintiff establishes a prima facie case of retaliation, the defendant may rebut the presumption of retaliation by asserting a legitimate, non-discriminatory reason for its actions. *Morris,* 201 F.3d at 793. The plaintiff then must show by a preponderance of the evidence that the employer's proffered reason for the employment action is pretextual. *Id.*

**1. Plaintiff Cannot Establish a Prima Facie Case of Retaliation Because She Did Not Suffer an Adverse Employment Action**

The Sixth Circuit noted the requirements for establishing a materially adverse

employment action in *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir.1999):

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

"The Sixth Circuit has consistently held that *de minimis* employment actions are not materially adverse and, thus, not actionable." *Bowman,* 220 F.3d at 463; *see Akers v. Alvey,* 338 F.3d 491, 497 (6th cir.2003) (mere inconvenience or alteration of job responsibilities is not a material adverse action).

■■ Plaintiff has failed to allege any actions by Defendant that would rise to the level of an adverse employment action. Plaintiff complains that Defendant required her to return to work in Building 865 from Building 868, where she had been transferred at her request. Clearly, this action was at most an inconvenience or alteration in her work routine and did not constitute more than a de minimis action.[12] *See Akers,* 338 F.3d at 497; *Kocsis v. Multi–Care Mgt.,* 97 F.3d 876, 885 (6th Cir.1996) (holding that "reassignments without salary or work changes do not ordinarily constitute adverse employment decisions in employment discrimination claims"); *Yates v. Avco Corp.,* 819 F.2d 630, 638 (6th Cir.1987) (same).

■ Plaintiff also alleges that she suffered from negative performance evaluations, was left out of meetings, and was ignored by her supervisors in retaliation for filing her EEO complaints. These allegations fail to state a prima facie case for a variety of reasons. First, Plaintiff has failed to produce any actual negative performance evaluation. In fact, the evidence is clear that Plaintiff has never received a negative evaluation, and that her evaluations contained positive comments. At any rate, even a "downgraded" or negative evaluation without a resulting tangible employment action "such as hiring, firing, failure to promote, reassignment with significantly different responsibilities" is not actionable. *Morris,* 201 F.3d at 788 (citing *Smart v. Ball State Univ.,* 89 F.3d 437, 442–43 (7th Cir.1996) (holding that negative performance evaluations alone cannot constitute an adverse employment action); *Parrish v. Ford Motor Co.,* 909 F.2d 1484 (6th Cir.1990) (indicating that evaluation must have an "adverse impact" on plaintiff)).

■ Plaintiff's third general complaint of retaliation is that she was denied the opportunity to attend several training courses in her area of specialization. As a general rule "an employer's refusal to allow a certain employee to attend training sessions [does] not effect a material adverse change in the terms and conditions of the plaintiff's employment." *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 406 (5th Cir.1999). As Defendant points out, the Sixth Circuit has not categorically rejected loss of training opportu-

---

**12.** Plaintiff's allegation, asserted for the first time in her Response, that her transfer back to Building 865 constituted constructive discharge is without merit. It is clear in this Circuit that in order to state a claim for constructive discharge, a plaintiff must actu-

ally have resigned employment. See *Logan v. Denny's, Inc.,* 259 F.3d 558, 584 (6th Cir. 2001). Because it is undisputed that Plaintiff did not resign her employment, this argument, which at any rate was not raised in the Complaint, will not be considered.

nities as a ground for a claim of retaliation under Title VII. However, the Circuit has required plaintiffs basing a retaliation claim on loss of training to show that the alleged denial of training resulted in demotion, loss of promotion, loss of pay or benefits, or some other detrimental, material change in the duties or conditions of employment. *See Douglas v. Caldera,* 29 Fed.Appx. 257, 258, 2002 WL 187366 (6th Cir. Feb.4, 2002) (unpublished); *Vinson v. Grant/Riverside Methodist Hospitals,* 2001 WL 1681125, *17 (S.D.Ohio 2001) (unpublished) (requiring plaintiff to show that lack of training resulted in change of pay, loss of promotions, or change in job responsibilities). In this case, there is no evidence at all that Plaintiff's career has suffered in any way from the alleged denial of training opportunities. Moreover, Plaintiff has testified that she has attended two or three training courses each year since her employment began—the same amount that an average employee in her branch receives, according to Plaintiff. Plaintiff also was allowed to attend one training course which she initially was denied permission to attend, and was denied funding to attend another training course because of budgetary constraints. Plaintiff has not disputed Defendant's assertion that no employees were allowed to attend the course as a result of budgetary constraints. Therefore, no genuine issue of material fact exists for submission to the jury on Plaintiff's denial of training claims.

The final category of retaliation about which Plaintiff complains is alleged failure to promote. Plaintiff identifies fourteen positions to which she alleges she was denied selection between June 1999 and March 2002. The Court agrees with Defendant that the Court lacks jurisdiction over these claims, which Plaintiff failed to raise in her EEO complaint or subsequent amendments thereto.

" 'It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge.' " *Weigel v. Baptist Hosp. of East Tenn.,* 302 F.3d 367, 379 (6th Cir.2002) (quoting *Strouss v. Mich. Dep't of Corr.,* 250 F.3d 336, 342 (6th Cir.2001)). The "general rule" in the Sixth Circuit "is that the 'judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.' " *Id.* (quoting *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 545 (6th Cir.1991) (internal quotation omitted)); *see also EEOC v. Bailey Co.,* 563 F.2d 439, 446 (6th Cir.1977). Pursuant to this rule, the Sixth Circuit has held that "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho, Cumberland Coll. Cafeteria,* 157 F.3d 460, 463 (6th Cir.1998). "Courts construe this requirement liberally, because most plaintiffs are laypersons who filed their EEOC charges without the benefit of counsel." *Blount v. D. Canale Beverages, Inc.,* 2003 WL 22890339, *6 (W.D.Tenn. July 23, 2003) (citing *EEOC v. Bailey Co., Inc.,* 563 F.2d 439, 446–47 (6th Cir.1977)); *see Haithcock v. Frank,* 958 F.2d 671, 675 (6th Cir.1992) (stating that "courts are guided by the principle that charges of discrimination ... should not 'result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading' ") (quotation omitted).

The Court finds that Plaintiff's failure-to-promote claims could not reasonably be expected to grow out of her

harassment and retaliation claims, and that the failure-to-promote claims must be dismissed for failure to exhaust administrative remedies.[13] Because Plaintiff has failed to establish a prima facie case of retaliation, that Title VII claim also must be dismissed.

## V. CONCLUSION

Based on the foregoing reasons, Defendant's Motion for Summary Judgment (Docket Entry No. 63) will be GRANTED.

An appropriate order shall be entered.

## ORDER

For the reasons explained herein and in the Memorandum entered contemporaneously herewith, the Court rules as follows:

(1) Defendant's Motion for Leave to File an Additional Exhibit to Defendant's Motion for Summary Judgment (Docket Entry No. 92) and Motion for Leave to File a Reply Memorandum in Support of the aforementioned Motion (Docket Entry No. 108) are GRANTED, pursuant to Local R. Civ. P. 8(b)(3), for the reasons articulated by Defendant in its Memorandum in Support of Defendant's Motion for Leave to File a Reply Memorandum (Docket Entry No. 109) and proposed Reply Memorandum. The Clerk is hereby directed to file Defendant's Reply Memorandum (attached to Docket Entry No. 109) and Exhibit Q to Defendant's Motion for Summary Judgment (attached to (Docket Entry No. 92));

(2) Defendant's Motion for Leave of Court to Accept Defendant's Response to Plaintiff's Statement of Facts Filed November 26, 2003, *Nunc Pro Tunc* as of November 25, 2003 (Docket Entry No. 99)

is GRANTED. Although Defendant's Response was filed one day after expiration of the filing period provided by Local Rule 8(b)(7) due to Defense Counsel's excusable neglect, the Court finds that this one-day delay did not prejudice Plaintiff. *See In re Pioneer Investment Svcs. Co.,* 943 F.2d 673, 677–79 (6th Cir.1991) (ruling that district court should have accepted creditor's late-filed proof of claim *nunc pro tunc* because lateness was due to attorney's excusable neglect and opposing party was not prejudiced). Moreover, as Defendant points out, Plaintiff requested and was granted (without opposition by Defendant) two extensions of time to file her Statement of Facts (*see* Docket Entry Nos. 80 and 83). For the foregoing reasons, the Court will consider Defendant's Response to Plaintiff's Statement of Facts (Docket Entry No. 94);

(3) Plaintiff's Motion to Strike Defendant's Response to Plaintiff's Statement of Facts and for Plaintiff's Statement of Facts to be Considered as Undisputed for Purposes of Summary Judgment (Docket Entry No. 96) is DENIED; and

(4) Defendant's Motion for Summary Judgment (Docket Entry No. 63) is hereby GRANTED on Plaintiff's sexual harassment and retaliation claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

There being no further issues before this Court, this case is hereby DISMISSED with prejudice.

It is so ORDERED.

---

**13.** Even if Plaintiff had administratively exhausted her failure-to-promote claims, and the Court therefore were free to consider them, the Court agrees with Defendant that Plaintiff has not established a genuine issue of material fact as to those claims, for the reasons elaborate upon by Defendant in its Reply. (*See* Docket Entry No. 93, at 16–18).